## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RENITA LEWIS,** | |
| **Plaintiff,** | |
| v. | **Case No. 23-CV-00087-SEH-MTS** |
| **AT&T MOBILITY SERVICES, LLC,** | |
| **Defendant.** | |

## OPINION AND ORDER

Plaintiff Renita Lewis worked for Defendant AT&T in a sales position that required her to work inside customer homes. She alleges that customers made inappropriate sexual remarks and engaged in conduct that made her feel unsafe on more than one occasion. She further alleges that she was terminated after reporting these incidents.

Plaintiff brings claims of employment discrimination and retaliation against Defendant, all on the basis of her purported disability. Plaintiff has not set forth sufficient evidence to create a dispute of material fact as to whether she can meet the applicable definition of "disability," and there are no disputed material facts that support a *prima facie* case of retaliation. For these and the other reasons explained in more detail below, Defendant's motion for summary judgment [ECF No. 47] is granted.

## I. <u>Background</u>

LCvR56-1(b) & (e) requires a moving party to include a section in a summary judgment brief that sets forth a statement of "material facts to which the moving party contends no genuine issue of fact exists," which shall be stated in "concise, numbered paragraphs" with accompanying citations. "The response brief in opposition to a motion for summary judgment ... shall begin with a section responding, by correspondingly numbered paragraph, to the facts that the movant contends are not in dispute and shall state any fact that is disputed." LCvR56.1(c). "All material facts" in the movant's statement of material facts will be admitted for summary judgment purposes "unless specifically controverted by the statement of material facts of the opposing party, *using the procedures set forth in this rule.*" *Id.* (emphasis added); *see also Mills v. Amazon.com Services, LLC*, No. 24-CV-0188-CVE-CDL, 2025 WL 861381, at *1 (N.D. Okla. Mar. 19, 2025) (collecting cases). Plaintiff did not comply with these procedures, so the Court deems Defendant's statement of undisputed material facts admitted for purposes of summary judgment unless otherwise identified.

Defendant employed Plaintiff as an in-home sales expert. [ECF No. 47-1 at 10]. The job description for Plaintiff's position includes several key roles and responsibilities, including that Plaintiff was expected to "sell[] AT&T products and services," and that she was expected to do so "[i]n the

residential customer's home." [ECF No. 47-10]; [ECF No. 47-9 at 2–3].[1] While performing her job duties in a customer's home on September 25, 2021, Plaintiff alleges that the customer "made comments about her breast, then stuck his hands down in his pants and asked [Plaintiff] if [she] liked to play around." [ECF No. 21 at 2]; *see also* [ECF No. 47-1 at 11]; [ECF No. 47-3 at 2]. This followed another incident where a customer engaged in inappropriate conduct toward Plaintiff. [ECF No. 47-1 at 11]. Plaintiff reported the September 25, 2021 incident to her then-supervisor the next day and told him that she no longer felt comfortable going on dispatches to customer homes. [ECF No. 47-1 at 11]; [ECF No. 47-3 at 2].

After the incident, Plaintiff's supervisor allowed her to perform some of her job duties remotely on a temporary basis. [ECF No. 47-11 at 4]. Plaintiff alleges that although Defendant's policy provides managers with discretion to allow employees to work remotely for up to 20 days, Plaintiff was removed from remote work status and put on leave in less than a week. [ECF No. 53 at 7–8]. Plaintiff's supervisor also "advised [her] to file a job accommodation request, sen[t] her the link to the job accommodation site, and helped her submit her request." [ECF No. 47-11 at 3].

---

[1] The job description in the summary judgment record is for a position called "integrated solutions consultant," but this position is also referred to as an in-home expert. *Compare* [ECF No. 47-1 at 10] *with* [ECF No. 47-9 at 2]; [ECF No. 47-10].

As a potential response to Plaintiff's concern about going inside customer homes, Plaintiff's supervisor asked whether she would consider a retail store position. [ECF No. 47-11 at 4]. Plaintiff responded by telling her supervisor that she needed more time to consider an in-store position because she was overwhelmed. [ECF No. 47-14 at 2]. She said she needed more time to process the events and "had to be honest about not feeling comfortable but [she] didn't think it would lead to [her] having to step down and go back to the store." *Id*. Plaintiff ultimately declined the offer for an in-store position; she said she was "willing and able to return to [her] regular position, but [she could not] go on dispatches" and that she could "do everything else." [ECF No. 47-15 at 2]. Plaintiff also asked her supervisor whether a technician (*i.e.* another employee) could be sent with her to dispatches at customer homes, but her supervisor explained that could not be done because technicians have different schedules, and their work is done outside the customer's home. [ECF No. 47-11 at 4].

Plaintiff initiated the job accommodation process with Defendant on October 4, 2021, but Defendant notified Plaintiff a few weeks later that her accommodation request was closed because "[n]o medical documentation has been submitted to support [her] request." [ECF No. 47-7 at 2]. However, Defendant extended her deadline to submit medical documentation no later than November 5, 2021. [ECF No. 47-7 at 2]. Defendant warned Plaintiff that

failure to provide documentation by the deadline would permanently close the claim for an accommodation. [*Id*.]. Although the record does not show that Plaintiff submitted health or other documentation as a part of the accommodation process, she did apply and was approved for disability benefits under Defendant's umbrella benefit plan. [ECF No. 47-21 at 2–3]; *see also* [ECF No. 47-23 at 2–21] (communications from the third-party benefits administrator, Sedgwick, approving Plaintiff's disability benefits following a "review of the medical documentation submitted by [her] physician."). A letter from Sedgwick to Plaintiff dated March 22, 2022, shows that her disability benefits began on October 13, 2021, and ran through April 12, 2022. [ECF No. 47-23 at 4]. On the last effective date of Plaintiff's benefits period, the third-party administrator asked Plaintiff if she would return to work the next day, to which Plaintiff responded "no." [ECF No. 47-21 at 3]; [ECF No. 47-25 at 2].

On May 5, 2022, after Plaintiff exhausted her disability benefits under Defendant's plan, the director of in-home sales, Krystal Adam, called Plaintiff to ask whether she "anticipated returning" to work, but Plaintiff did not answer or return the call. [ECF No. 47-9 at 5]. By May 27, 2022, Adam had still not heard from Plaintiff about whether she intended to return to work. [ECF No 47-9 at 5–6]. Therefore, Adam terminated Plaintiff's employment as a "Separation from Employment, End of Benefits," which is a "standard

5

payroll code for employees who exhausted short-term disability benefits and have approved long-term disability benefits without an approved Disability Leave of Absence." [ECF No. 47-9 at 5–6].

Conspicuously absent from the summary judgment record is a concise explanation of what Plaintiff's purported disability is, or any evidence showing the details of such a disability other than Plaintiff's own conclusory statements. The parties do not dispute that Plaintiff sent some kind of records to Defendant's third-party benefits administrator, Sedgwick. Notably, though, those documents were sent to Sedgwick, not AT&T. [ECF No. 47-1 at 22] (Plaintiff testifying about communications between her doctor and Sedgwick, not Defendant); [ECF No. 47-17 at 3–4]. And in any event, Plaintiff has not put any such records, expert witness reports or testimony, or any other supporting evidence before the Court for consideration. The only thing Plaintiff offers about her purported disability are her own conclusory statements about her "anxiety." *See* [ECF No. 47-5 at 2] (Plaintiff telling her supervisor in an email about "working through [her] anxiety while on the job."); [ECF No. 47-1 at 6] (Plaintiff testifying in her deposition that the feeling she gets "gives [her] anxiety.").

Plaintiff asserts 5 claims in the second amended complaint:

1. Failure to engage in required interactive process under the Oklahoma Anti-Discrimination Act ("OADA") and the Americans with Disabilities Act ("ADA");

2. Failure to accommodate under the OADA and ADA;

3. Disability discrimination under the OADA and ADA;

4. Another disability discrimination count for discriminatory discharge under the OADA and ADA; and

5. Retaliation under the OADA and ADA.

[ECF No. 21 at 8–9].

Failure to engage in the interactive process is not a recognized standalone claim. *See Dansie v. Union Pacific R.R. Co.*, 42 F.4th 1184, 1194 n.2 (10th Cir. 2022) ("Defendant contends that even if it did not engage in the interactive process, Plaintiff still cannot prevail on summary judgment because failure to engage in the interactive process is not a standalone claim. True enough—'an employee cannot maintain a failure to accommodate claim based solely on an employer's failure to engage in the interactive process.'") (quoting *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1207 n.29 (10th Cir. 2018)).

Therefore, Plaintiff has three categories of viable claims against Defendant: (1) disability discrimination; (2) failure to accommodate; and (3) retaliation.[2] For purposes of summary judgment, these claims are evaluated the same way under the ADA and the OADA, so "the Court's conclusions

---

[2] Some Oklahoma district courts have found that retaliation claims are not cognizable under the OADA. *E.g. Mills v. Amazon.com Services, LLC*, No. 24-CV-0188-CVE-CDL, 2024 WL 3205397, at *3 (N.D. Okla. Jun. 27, 2024) (citing *Sultuska v. JPMorgan Chase Bank,* No. CIV-18-669-C, 2019 WL 4888579, at *2 n.2 (W.D. Okla. Oct. 3, 2019)). But that issue was not raised by the parties, so the Court will not address it.

regarding the ADA claims also apply to the OADA claims." *Simpson v. American Fidelity Assurance, Co.*, No. CIV-24-512-R, 2025 WL 1351553, at *3 n.5 (W.D. Okla. May 8, 2025) (citing *McCully v. Am. Airlines, Inc.*, 695 F.Supp.2d 1225, 1246 (N.D. Okla. 2010), *aff'd* 405 F. App'x 260 (10th Cir. 2010)).

## II. <u>Standard</u>

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In applying the summary judgment standard, a court must view facts in the light most favorable to the non-moving party. *Forth v. Laramie Cnty. Sch. Dist. No. 1*, 85 F.4th 1044, 1059 (10th Cir. 2023). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Conclusory, unspecified, self-serving statements or affidavits without evidentiary support will not survive summary judgment. *Janny v*

*Gamez*, 8 F.4th 883, 899 (10th Cir. 2021); *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

## III. Discussion

As noted above, Plaintiff's claims fall into three categories: (1) disability discrimination; (2) failure to accommodate; and (3) retaliation. Defendant is entitled to summary judgment on Plaintiff's failure to accommodate and disability discrimination claims because she does not meet the applicable definition of "disability." Defendant is also entitled to summary judgment on Plaintiff's retaliation claim because her allegations are conclusory, she cannot show the requisite causation, and the purported protected opposition does not fall within the ADA's protections.

### A. Disability Discrimination and Failure to Accommodate Claims
#### 1. Framework

Disability discrimination claims under the ADA without direct evidence of discrimination are evaluated under the traditional *McDonnell Douglas* burden-shifting framework. *Williams v. FedEx Corp. Services*, 849 F.3d 889, 896 (10th Cir. 2017). Under that framework, Plaintiff must first make a *prima facie* case of disability discrimination by raising a genuine issue of material fact as to each element of the claim. *Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 989 (10th Cir. 2021). If Plaintiff does that, the burden shifts to Defendant to offer a legitimate, nondiscriminatory reason for

its action. *Id.* at 990. If Defendant does that, the burden shifts back to

Plaintiff "to show a genuine issue as to whether [Defendant's] reason was

pretextual." *Id.* Unlike a disability discrimination claim, failure to

accommodate claims are evaluated under a modified *McDonnell Douglas*

framework:

> Under the first step of the modified framework, a plaintiff must demonstrate that (1) [she] is disabled; (2) [she] is otherwise qualified; and (3) [she] requested a plausibly reasonable accommodation." If the plaintiff makes a showing on all three elements, the burden shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer.

*Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1204 (10th Cir. 2018) (cleaned up).

Now for the first step for each claim. To make a *prima facie* case of

discrimination, Plaintiff must show: "(1) that [s]he is disabled within the

meaning of the ADA; (2) that [s]he is qualified for the job held or desired; and

(3) that [s]he was discriminated against because of [her] disability." *Id.* at

1192 (10th Cir. 2018) (quotation marks and citation omitted). And as for the

first step of the modified framework for Plaintiff's failure to accommodate

claim, Plaintiff likewise must show that she is disabled. *Id.* at 1204; *see also*

*Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020) (listing the elements of

a failure to accommodate claim under the ADA as: "1) she was disabled; 2)

she was otherwise qualified; 3) she requested a plausibly reasonable accommodation; and 4) defendant refused to accommodate her disability.").

Both claims require Plaintiff to show she was disabled at the first step of the inquiry. *See also* 42 U.S.C. § 12112(a), (b)(5)(A) (prohibiting employers from discriminating against a "qualified individual on the basis of disability" and "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."). Therefore, Defendant is entitled to summary judgment if Plaintiff cannot at least establish a dispute of material fact as to whether she is disabled.

## 2.  **Plaintiff Does not Meet the Definition of "Disability"**

Defendant argues that the summary judgement record lacks "any evidence that [Plaintiff] had *any* medical condition between September 25, 2021 (when she [was] effectively performing her dispatching duties) and October 7, 2021 (when she stopped working)," and that Plaintiff's "self-diagnosis of 'anxiety' cannot establish a disability." [ECF No. 47 at 16] (emphasis in original). Plaintiff responds in conclusory fashion that she has a disability. *E.g.,* [ECF No. 53 at 13] (stating that the customer incident that gave "rise to Ms. Lewis' disability occurred in September 2021."). Plaintiff further contends that Defendant "in fact had medical documentation provided by [her] medical provider such that a determination could be made about [her] application for disability benefits from October 13, 2021, through April 2022." [*Id.* at 21].

Plaintiff's arguments also focus on whether she could perform the essential functions of her job as a "qualified individual," rather than the separate question of whether she had a "disability." *See* [ECF No. 53 at 11] (highlighting, among other things, that Plaintiff testified in her deposition that "other than going and 'striping,' [sic] she had no medical restrictions limiting her ability to perform any job."). As noted above, however, being "qualified" and having a "disability" are *separate elements* for disability discrimination and failure to accommodate claims in this kind of case. Therefore, Plaintiff's arguments about being qualified do not necessarily impact the question of whether she had a disability that would bring her within the protections of the ADA.

There are three categories of "disability" under the ADA: (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff invokes different categories of disability in the second amended complaint. *Compare* [ECF No. 21 at 8] ("Plaintiff was qualified as "disabled" pursuant to the ADA because she was actually impaired as described in 42 U.S.C. § 12102(1)(A).") *with* [*Id.* at 9] ("Defendant terminated Plaintiff's employment because of Plaintiff's disability and/or perceived disability and/or record of a disability and/or because it regarded Plaintiff as disabled.").

Because Plaintiff does not clarify what category of disability she meets under § 12102, the Court asked Plaintiff's counsel to clarify that point during the hearing on the motion for summary judgment. Counsel clearly responded that Plaintiff had an actual disability under § 12102(1)(A), though later in the hearing counsel referenced Plaintiff being regarded as having a disability. Because Plaintiff has not briefed the issue of having a "record of such impairment" under § 12102(1)(B), and because that was not argued during the hearing, the Court will only address whether Plaintiff had an actual disability or was regarded as having a disability under § 12102(1)(A) & (C). *See generally Pamela D.T. v. O'Malley*, No. 4:23-cv-62-CDL, 2024 WL 1381779, at *6 (N.D. Okla. Mar. 31, 2024) (collecting cases and noting that perfunctory arguments are waived).

With respect to whether Plaintiff is actually disabled under § 12102(1)(A), "when a plaintiff alleges an impairment 'that a lay jury can fathom without expert guidance,' courts generally 'do not require medical evidence' to establish an ADA disability." *Tesone v. Empire Marketing Strategies*, 942 F.3d 979, 997 (10th Cir. 2019) (quoting *Mancini v. City of Providence by and through Lombardi*, 909 F.3d 32, 42 (1st Cir. 2018)). "[C]ourts assess the necessity of expert evidence on a case-by-case basis and consider the type of disability alleged," and expert testimony is required "only if an impairment is

'rare' or 'of such character as to require skilled and professional persons to determine the cause and extent thereof.'" *Id.* at 998 (citations omitted).

Other than conclusory arguments in her response brief about having a disability, Plaintiff does not explain what her impairment is or how it substantially limits a major life activity. It appears that Plaintiff described her condition as "anxiety" during her deposition. [ECF No. 47-1 at 6].

Unlike knee, back, or other obvious physical impairments that a lay juror could more easily understand, the Tenth Circuit has found in several circumstances that some mental impairments require expert testimony. For example, in *Neri v. Bd. of Educ. For Albuquerque Public Schools*, the court noted that a plaintiff "could testify about the physical and mental symptoms she experienced," but that she was "not competent to testify that those symptoms were caused by PTSD or to opine on the physical or mental effects of PTSD generally, 'for those are clearly matters beyond the realm of common experience and require the special skill and knowledge of an expert witness.'" 860 F. App'x 556, 562 (10th Cir. 2021) (quoting *Felkins v. City of Lakewood*, 774 F.3d 647, 652 (10th Cir. 2014)); *see also Clancy v. Miller*, 837 F. App'x 630, 635–36 (10th Cir. 2020) (including "acute anxiety" among the conditions that would require expert testimony to show an actual disability). The Tenth Circuit made its determination in *Neri* even though the applicable regulation lists PTSD as one of the impairments that "will, as a factual matter, virtually

14

always be found to impose a substantial limitation on a major life activity."

860 F. App'x at 562–63 (citing 29 C.F.R. § 1630.2, which does not so list

anxiety). Therefore, without any expert testimony, Plaintiff cannot make a

showing that she meets the definition of "disability" under the ADA.

Not only has plaintiff not provided any expert testimony about her anxiety

or any other impairment, she has not provided *any* evidence or other records

that could establish she had a disability. She only offers her own conclusory

statements that she has a disability. But that is not enough to survive

summary judgment. Because Plaintiff has presented no evidence to create a

genuine dispute over whether she had an actual disability, she fails at step

one of the burden shifting framework for her disability discrimination and

failure to accommodate claims. The court's inquiry need not go further, and

Defendant is entitled to summary judgment.

With respect to whether Plaintiff was "regarded as" having a disability by

Defendant, Plaintiff must "establish[ ] that … she has been subjected to an

action prohibited under this chapter because of an actual or perceived

physical or mental impairment whether or not the impairment limits or is

perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). "This

provision, however, is not applicable to 'transitory or minor' impairments. An

impairment is transitory if it has 'an actual or expected duration of 6 months

or less.' Thus, a "regarded as" claim requires a showing that: '(1) [s]he has an

15

actual or perceived impairment, (2) that impairment is neither transitory nor minor, and (3) the employer was aware of and therefore perceived the impairment at the time of the alleged discriminatory action.'" *McKeown v. Paycom Payroll LLC*, No. CIV-24-301-PRW, 2025 WL 978221, at *5 (W.D Okla. Mar. 31, 2025) (citations omitted). So even setting aside Plaintiff's failure to provide expert testimony about her purported disability, Plaintiff has offered no evidence to show that her disability is neither transitory nor minor. Therefore, Defendant is likewise entitled to summary judgment under a "regarded as" theory.

## B. **Retaliation**

Plaintiff's retaliation claim is subject to the same burden shifting framework as her discrimination claims. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018). Namely, Plaintiff must first make a *prima facie* case that she: (1) "engaged in protected opposition to discrimination;" (2) "a reasonable employee would have found [the] employer's subsequent action to be materially adverse;" and (3) a causal connection exists between [the] protected activity and the employer's action." *Id*. If Plaintiff establishes a *prima facie* claim, the burden shifts to Defendant to set forth a legitimate, non-retaliatory reason for its conduct. *Id*. at 1193. If Defendant does so, the burden shifts back to Plaintiff to show that the stated reasons are pretextual. *Id*.

16

Defendant argues that it is entitled to summary judgment on Plaintiff's retaliation claim for a few reasons. First, assuming that Plaintiff's protected opposition was either reporting the September 2021 customer incident or requesting a job accommodation in October 2021, Defendant contends that Plaintiff cannot establish causation because she was not terminated until approximately 8 months after those events. [ECF No. 47 at 28–29]. Second, Defendant argues that "significant intervening events occurred after [Plaintiff's] request for accommodation and before the decision to separate her employment." [*Id.* at 29]. Specifically, Plaintiff's "medical information submitted to Sedgwick showed as of April 13, 2022 she could not perform *any* job and was not likely to resume her duties within six months." [*Id.* at 29–30] (emphasis in original). Defendant further argues it is entitled to summary judgment because Plaintiff did not respond when Defendant reached out to inquire when or whether she intended to return to work. [*Id.* at 30].

Plaintiff responds in conclusory fashion that "at least some evidence supports a finding that [Defendant's] decision to terminate [Plaintiff] was in fact causally connected to her protected activities and multiple complaints that started in late September 2021 that continued up and through her termination." [ECF No. 53 at 21–22]. Plaintiff supports this argument with a string of citations to multiple depositions without any further explanation, argument, or analysis. Perfunctory, undeveloped arguments like this are

17

waived. *Pamela D.T. v. O'Malley*, No. 4:23-cv-62-CDL, 2024 WL 1381779, at *6 (N.D. Okla. Mar. 31, 2024) (collecting cases and noting that perfunctory arguments are waived). Judges "are not like pigs, hunting for truffles buried in briefs," and the Court will not make arguments on Plaintiff's behalf. *Rocky Mountain Wild, Inc. v. United States Forest Service*, 56 F.4th 913, 927 (10th Cir. 2022) (quoting *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546) (10th Cir. 1995)).

Plaintiff also argues that it was more than just her termination that was retaliatory. First, she asserts that Defendant's offer to switch her to an in-store role would have been a demotion. [ECF No. 53 at 22]. And second, she asserts that Defendant prematurely ended her temporary remote work status after she told her supervisor that she felt she was being penalized for reporting sexual harassment. [*Id.* at 22–23].

<u>In-Store Role</u>

Plaintiff offers nothing other than her own conclusory perception that being moved to an in-store role would have been a demotion that "a reasonable employee would have found … to be materially adverse." *Lincoln v. BNSF Ry. Co.,* 900 F.3d 1166, 1209 (10th Cir. 2018). For example, she offers no evidence about changes in pay or other differences in the positions that would allow a finder of fact to conclude that a change in positions would be materially adverse. Plaintiff's conclusory perception is not enough to

18

create a dispute of material fact as to this element of the *prima facie* case of retaliation, so Defendant is entitled to summary judgment.

Additionally, Plaintiff appears to contend that her protected activity was "report[ing] the 'sexual harassment' incident." [ECF No. 53 at 22]. However, a protected activity under the ADA must have been an act in opposition of "any act or practice made unlawful by *this chapter*" of the statute. 42 U.S.C. § 12203(a) (emphasis added). "This chapter" refers to Chapter 126 of Title 42 of the United States Code, which covers equal opportunity for individuals with disabilities. Chapter 126 does not provide protections against discrimination on grounds other than disability. *See Mills v. Amazon.com Services, LLC*, No. 24-CV-0188-CVE-CDL, 2024 WL 3205397, at *5 (N.D. Okla. Jun. 27, 2024) (granting motion to dismiss on disability retaliation claim when alleged protected activity involved race discrimination, but not discrimination on the basis of disability). To the extent Plaintiff asserts that reporting an instance of sexual harassment is her protected opposition to discrimination, Plaintiff cannot make a *prima facie* case that she engaged in protected opposition under the ADA. Defendant is, therefore, entitled to summary judgment.

Temporary Remote Work Assignment

Plaintiff alleges that Defendant involuntarily put her on leave before she fully exhausted the temporary remote work period her supervisor could

authorize. [ECF No. 53 at 22–23]. She argues this was retaliatory because "these events all happened within days of" telling her supervisor that she felt she was being penalized for reporting sexual harassment. [*Id.*]. But as explained above, the ADA does not protect against forms of discrimination other than discrimination on the basis of disability. Therefore, Plaintiff cannot make a *prima facie* case that she engaged in protected opposition under the ADA, and Defendant is entitled to summary judgment.

## IV. Conclusion

For the reasons explained above, Defendant's motion for summary judgment [ECF No. 47] is GRANTED. The Court will enter a separate judgment.

Because judgment will be entered in Defendant's favor and against Plaintiff, Plaintiff's motion in limine [ECF No. 48] and Defendant's motion in limine [ECF No. 49] are MOOT.

DATED this 27th day of June, 2025.

_____
Sara E. Hill
UNITED STATES DISTRICT JUDGE